**SO ORDERED.**

**SIGNED this 05 day of March, 2012.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

RONALD and SUSAN KOEHLER,                CASE NO. 11-00999-8-JRL

    DEBTOR.                                                              CHAPTER 7

GREGORY B. CRAMPTON, TRUSTEE,

    PLAINTIFF

      v.                                                                              ADVERSARY PROCEEDING
                                                                                         NO.   11-00278-8-JRL
RONALD JOSEPH KOEHLER and
SUSAN MARIE KOEHLER,

    DEFENDANT

### ORDER

The trustee ("plaintiff") filed this adversary proceeding against Ronald and Susan Koehler ("defendants") pursuant to 11 U.S.C. § 548 to recover for fraudulent transfers. A trial was held on February 15, 2012 in Raleigh, North Carolina.

### JURISDICTION

This court has jurisdiction over the parties and the subject matter of this proceeding

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine. This order constitutes the findings of fact and conclusions of law required by B.R. 7052.

## FACTS

In 2006, the debtors purchased three pieces of real property (collectively "properties") on the North Carolina Outer Banks as an investment in their retirement. They planned to earn a profit by renting the properties during the year to vacationers and anticipated appreciation. Over time, the debtors withdrew approximately $80,000.00 from their existing individual retirement accounts ("IRAs") to cover the properties' payments during the months they were unable to rent the properties. Eventually the debtors could no longer afford to keep the properties at the initial loan rates. In the fall of 2010, they met with bankruptcy counsel to discuss the possibility of filing a chapter 11 plan to reorganize their debts and keep the properties. Ultimately, the debtors decided to file for relief under chapter 7 of the Bankruptcy Code and surrender the properties.

This adversary proceeding centers around the events that took place in the weeks prior to the debtors' filing. Once the debtors agreed to surrender the properties, they decided to use an auction service to sell all of their household furnishings inside the properties. In January 2011, they received a check from the auction service for $14,000.00. After consulting with bankruptcy counsel, the debtors used $12,000.00 of the auction proceeds to fund two new IRAs. The remainder of the auction proceeds were used to pay ordinary insurance premiums and truck repairs. The debtors fully disclosed these transactions on their bankruptcy petition.

On February 8, 2011, the debtors notified their bankruptcy counsel, by email, that they "did everything today (IRA's, insurance premiums, truck repairs, etc.)." The debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on February 10, 2011.

## DISCUSSION

Pursuant to 11 U.S.C. § 548(a)(1)(A),

> [t]he trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made or incurred within 2 years before the date of filing of the petition if the debtor . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

11 U.S.C. § 548(a)(1)(A). It is undisputed that the debtors converted non-exempt personal property into exempt property within two years of filing bankruptcy for the purpose of claiming an exemption in the property. The trustee contends that converting non-exempt property into exempt property pre-petition, for the purpose of claiming an exemption, is a fraudulent transfer under § 548. The debtors argue that they are permitted to make full use of North Carolina exemptions and thus this practice is not fraudulent.

The general rule in the Fourth Circuit is, "[m]ere conversion of property from non-exempt to exempt on the eve of bankruptcy-even though the purpose is to shield the asset from creditors-is not enough to show fraud." Ford v. Poston, 773 F.2d 52, 54 (4th Cir. 1985). This rule is supported by the House Report from The 1978 Act which states:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

See H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6317; S.Rep. No. 989, 95th Cong., 2d Session 76, reprinted in *55 1978

3

U.S.Code Cong. & Ad.News 5787, 5862.

According to Ford, a fraudulent transfer is something beyond mere conversion of non-exempt property to exempt.  See Ford, 773 F.2d at 55 (the claimed exemption will be subject to the code's fraudulent transfer provision "if the transfer of property occurs within one year of the bankruptcy filing and there is evidence to indicate a fraudulent purpose aside from the mere conversion of non-exempt property.").  The Ford court ultimately concluded that there was sufficient evidence for the bankruptcy court to find that the debtor had a fraudulent purpose in making the transfer, beyond mere conversion of property.  Id.  The debtor in that case transferred property to himself and his wife, to hold as tenants by the entirety, one day after a judgment was entered against him.  Id.  The court was unconvinced by the debtor's testimony that the transfer was made to correct a deed which had been transferred solely to the debtor six-months prior.  Id.  Notably, the court stated that this type of inquiry was fact specific.  Id.

Here, the plaintiff relies on the court's holding in In re Duncan, No. S-06-00025-5-AP (Bankr. E.D.N.C. Nov. 28, 2006), vacated by consent order (Bankr. E.D.N.C. Jun. 18, 2007), for the proposition that converting non-exempt property to an IRA is fraudulent unless it is done for the purpose of contributing to the debtor's overall retirement plan.  The plaintiff distinguishes Duncan from the present case by arguing that unlike the debtors the in this case, the debtors in Duncan always intended to repay their retirement loans, and that the transfers were consistent "with the debtors' legitimate attempts to provide for their retirement."  In re Duncan, No. S-06-00025-5-AP (Bankr. E.D.N.C. Nov. 28, 2006).  The plaintiff argues that here, the debtors made an investment decision unrelated to their retirement planning.  In addition the plaintiff argues that the timing of the transfer, the source of funds that were transferred, and the employment

status of the debtors, are all different from the debtors' circumstances in Duncan and thus the court should find this to be a fraudulent transfer.

The defendant argues that the facts of this case are indistinguishable from Duncan. The debtors in this case are in their mid-fifties and have a need for retirement planning just like the debtors in Duncan. The debtors originally purchased the properties as an investment in their retirement and often used funds from their existing IRAs to pay the properties' obligations; thus the auction proceeds are a modest return on the debtors' original retirement investment. In addition, the debtors historically have had retirement accounts, and the sum invested into the new accounts was conservative.

The court finds that the debtors did not act with intent to defraud their creditors when they converted personal property to IRAs. This case does not have the requisite indicia of fraudulent behavior that is necessary for the court to find a fraudulent transfer occurred. In this case, the debtors fully disclosed the transaction in their petition in an open and forthright way. The debtors liquidated property they already owned by selling it through a legitimate uninterested channel at market value. In addition, the value invested into the IRAs was modest in light of the $80,000.00 the debtors withdrew over time to invest in this retirement property. As to the timing of the conversion, Ford makes clear that the fact that the conversion took place on the eve of the bankruptcy filing does not necessarily raise this transaction to fraudulent per se.

Based on the foregoing, judgment is entered in favor of the defendants.

**END OF DOCUMENT**